IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANK NICHOLAS MERLINO, et al.,

Plaintiffs,

v.

DAVID B. FRAZIER, et al.,

Defendants and Third-Party Plaintiffs,

v.

CLARE G. WALKER, et al.,

Third-Party Defendants.

CIVIL NO. 19-1304 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On April 5, 2018, Frank Nicholas Merlino ("Merlino") fell off a second story balcony of a house owned by David Frazier and his wife Diane Jones ("the Fraziers"). The house had been rented by Third-Party Defendant Clare Walker ("Walker") for guests attending her son's wedding. The accident caused Merlino severe injuries, including hearing and memory loss, and he had jaw, cheek and eye socket reconstructive surgery, among others. As a result, Merlino suffers from mental and physical impairments and has endured a long and painful recovery process.

On April 4, 2019, Merlino filed the present lawsuit together with his parents Matthew P. Merlino and Debora K. Merlino ("Plaintiffs") to recover damages they suffered as a result of the accident. They aver that, because the balcony rail was too low, it failed to meet construction and/or safety standards and constituted a safety hazard for

the guests who visited the property. Plaintiffs did not include Walker in the lawsuit, choosing to sue only the Fraziers.

On February 3, 2020, the Fraziers brought Walker into the case via a Third-Party Complaint pursuant to Fed.R.Civ.P. 14. (Docket No. 41). The Fraziers allege Walker is liable to them for all or part of Plaintiffs' claims. They also argue that Walker must indemnify and hold them harmless against any claims arising from the use of the property due to a hold harmless clause contained in a rental agreement that Walker signed when she leased the Fraziers' property ("the Agreement").

Before the Court is Walker's "Motion for Summary Judgment" (Docket No. 123) in which she argues that there was no contract covering the rental of the second-floor unit where Merlino fell from and thus, the hold harmless provision is inapplicable to her. If any claims remain, they are in tort under Puerto Rico Civil Code Article 1802[1] and are time-barred. In the alternative Walker posits that, even if the claims were timely brought against her, the accident occurred as a result of Merlino's and/or the Fraziers' negligence, but not her own.

In turn, the Fraziers argue that the claims were timely brought, and that Walker was negligent in permitting an unauthorized party at the house, which led to Merlino's eventual accident. (Docket No. 129). Also before the Court are Walker's reply to the Fraziers' opposition and the Fraziers' sur-reply thereto. (Docket Nos. 143 and 153).

For the reasons explained below, Walker's Motion for Summary Judgment (Docket No. 124) is GRANTED.

---

[1] The Puerto Rico Civil Code was amended in 2020. The causes of action pertaining to this case, however, arose when the previous Code was still in effect. The Court therefore analyzes the issues in this case under the provisions of the 1930 Civil Code. P.R. Laws Ann., tit. 31 §§ 11717, 11720 (2020).

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 3 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 3
_____

## STANDARD

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it could potentially affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 4 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 4
_____

numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).  If they so wish, they may submit a separate statement of facts which they believe are in controversy.

Time and again, the First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012).  Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not-genuinely controverted.'" Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).  Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Loc. Rule 56(e); Rodríguez-Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).

**UNCONTESTED FACTS SUBMITTED BY WALKER**

1. The Fraziers are the owners of a beach front property located in Isabela, Puerto Rico, Bajuras ward, in Jobos beach ("Casa Isabela"). Walker Ex. 3, p. 44, l. 17-19.

2. Ana Valeria Campóo ("Campóo") is a hostess that manages the rentals of several properties, including Casa Isabela, since around 2016. Walker Ex. 5, p. 12, l. 24-25; p. 13, l. 1-16; p. 20, l. 23-25; p. 21, l. 1-4.

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 5
_____

3. Walker rented three different units at Casa Isabela for the days of April 2-8, 2018. Walker Ex. 6, p. 18.

4. On the evening of April 5, 2018, Merlino suffered an accident when he fell from the second level of Casa Isabela. Docket No. 1, ¶ 17-18; Docket No. 98, ¶ 9.

5. Casa Isabela is a house with three units. There are two units on the first floor. Each unit on the first floor has two bedrooms, a small living room, a kitchen and one bathroom. The second floor is the same size as the first-floor units, but has one master bedroom, a big bathroom, big living room and a big kitchen. Walker Ex. 5, p. 23, l. 25; p. 24, l. 1-11.

6. The units are rented separately. Walker Ex. 5, p. 24, l. 12-13.

7. Casa Isabela was listed through the HomeAway rental platform when Campóo began managing the property in 2016. Walker Ex. 5, p. 21, l. 5-25; p. 23, l. 22-8; Walker Ex. 3, p. 20, l. 14-25; p. 21, l. 1-7.

8. When Campóo started working with David Frazier, he gave her documents which contained the codes for his PayPal account, access information to the HomeAway platform, including the passwords, and the names of individuals that provided services to Casa Isabela. Walker Ex. 5, p. 21, l. 15-19; p. 22, l. 14-22.

9. While the Casa Isabela units were listed in the HomeAway platform, Campóo rented the units through a written contract provided by David Frazier. She did not use a written contract when renting the units through the Airbnb platform. Walker Ex. 5, p. 24, l. 14-25; p. 25, l. 1- 13.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 6 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 6
_____

10. On January 24, 2017, Walker first contacted Campóo through the HomeAway platform and expressed interest in renting the two first-floor units from April 2-8, 2018. Campóo responded the same day through the HomeAway platform confirming availability of the two units for said dates. Walker Ex. 4, p. 20, l. 3-7; Walker Ex. 5, p. 29, l. 14-25; p. 30, l. 1-2, 15-18; p. 31, l. 19-25; p. 32, l. 1; Walker Ex. 6, pp. 1-5, 19.

11. On January 25, 2017, Walker paid a security deposit of $500.00 to book the two first-floor units. Walker Ex. 6, p. 20.

12. Campóo messaged Walker through HomeAway indicating that both units would be included in one contract. Walker Ex. 5, p. 32, l. 19-25; p. 33, l. 1-19; Walker Ex. 6, pp. 6-11, 20-21.

13. On March 7, 2017, Walker asked Campóo for the contract as she had not received it. Walker Ex. 5, p. 34, l. 11-25; p. 35, l. 1; Walker Ex. 6, pp. 22-23.

14. On April 24, 2017, Campóo sent Walker the Agreement of the two first-floor units. Walker Ex. 5, p. 37; l. 21-25; p. 38, l. 1-13; Walker Ex. 6, p. 29.

15. On April 25, 2017, Walker returned the signed Agreement to Campóo. Walker Ex. 5, p. 38, l. 14-17; Walker Ex. 6, pp. 22, 29.

16. The first page of the Agreement confirmed that the rental was for two (2) units, the "East and West" apartments; for eight (8) people; no kids; and the total rental amount was $3,100.86. Walker Ex. 5, p. 40, l. 10-17; Walker Ex. 6, p. 23.

17. On December 16, 2017, Campóo sent an email to Walker with the same Agreement previously sent and signed on April 27, 2017, for the first-floor units. Walker again signed and returned the Agreement on December 18, 2017.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 7 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 7
_____

Walker Ex. 5, p. 45, l. 1-19; p. 46, l. 4- 12; Walker Ex. 6, pp. 36, 41.

18. On March 2, 2018, Walker sent the remaining payment for the two (2) first-floor units through PayPal, in the amount of $3,100.86, plus an additional $93.00 for a PayPal processing fee. Walker Ex. 5, p. 47, l. 23-25; p. 48, l. 1-4; p. 49, l. 3-23; Walker Ex. 6, pp. 46-47.

19. The second-floor unit of Casa Isabela was not available for rental when Walker rented the first-floor units. Walker Ex. 4, p. 33, l. 1-2.

20. On March 13, 2018, the second-floor unit of Casa Isabela became available. Walker Ex. 5, p. 51, l. 1-9; Walker Ex. 6, p. 43.

21. On March 13, 2018, Walker communicated to Campóo that she was interested in renting the second-floor unit of Casa Isabela and requested a contract for the same. Walker Ex. 5, p. 53, l.5-10; Walker Ex. 6, pp. 50-51.

22. Campóo sent Walker information for the second-floor unit. Walker Ex. 4, p. 34, l. 1-6.

23. On April 3, 2018, Walker requested from Campóo the invoice for the second-floor unit and paid a total rental fee of $1,377.50 for five (5) nights through PayPal. Walker Ex. 5, p. 56, l. 6-20; Walker Ex. 6, p. 42.

24. Walker asked, but did not receive, a contract for the second-floor unit and did not enter into another written contract for that unit. Walker Ex. 4, p. 34, l. 1-6.

25. Campóo does not recall sending to Walker a contract for the rental of the second-floor unit. Walker Ex. 5, p. 56, l. 21-24.

26. Walker never went to Casa Isabela until after the accident object of this case. Walker Ex. 4, p. 37, l. 7-16.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 8 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 8
_____

## UNCONTESTED FACTS SUBMITTED BY THE FRAZIERS

27. Upon starting to work with Casa Isabela, Campóo switched the contact information that appeared on the HomeAway page that listed the property and included her phone number but kept the same email address. Frazier Ex. 1, p. 21, l. 12-25.

28. Campóo cannot remember when the Casa Isabela listing was changed to Airbnb. Frazier Ex. 12, p. 24, l. 9-22; p. 36, l. 8-25.

29. David Frazier cannot recall if Casa Isabela was rented to Walker through HomeAway or directly through Campóo. If the client contacted Campóo directly, as happened occasionally, the rental would not go through the HomeAway platform. Frazier Ex. 9, p. 42, l. 13-25; p. 43, l. 1-3.

30. The Fraziers use Casa Isabela as a second residence and occasionally rent it to defer expenses. Frazier Ex. 10, p. 57, 1-6.

31. Campóo does not use a written contract every time she rents a unit in Casa Isabela. Frazier Ex. 12, p. 24, l. 12-19.

32. The HomeAway confirmation of the rental of the first-floor units dated April 24, 2017, was sent only to Walker. Frazier Ex. 13, p. 39, l. 19-25; p. 40, l. 1-4.

33. Campóo and Walker eventually spoke regarding Walker's interest in renting the second level apartment. Campóo cannot recall when they talked about it. Frazier Ex. 14, p. 42, l. 1-11.

34. On April 2, 2018, Campóo and Walker communicated via text and the former stated that she would send "a Paypal money request for 5 nights the second-floor price is $250 2 adults - $290 4 adults per night….". Walker replied that

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 9 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 9
_____

"[t]he upstairs will be for 2 guests" ... and requested "another invoice." Frazier Ex. 16.

35. When Walker approached Campóo and told her she was interested in renting the second level apartment, Campóo told her it was the Fraziers' home. Frazier Ex. 18, p. 76, l. 11- 25; p. 77, l. 1-25; p. 78, l. 1-9

## LEGAL ANALYSIS

The Third-Party Complaint filed by the Fraziers against Walker seeks to hold her liable for any sums they may have to pay to Plaintiffs pursuant to a hold harmless contractual provision contained in the Agreement. Walker posits, in support of her argument for summary disposition, that there was no written contract covering the second-floor unit, which was rented at a different time and was paid for separately than the first-floor units. For this reason, Walker argues that there is no applicable hold harmless clause, and she could only be held liable for her own negligence under Puerto Rico Civil Code Article 1802.

In addition, Walker asserts that, pursuant to the leading Puerto Rico Supreme Court cases of <u>Fraguada Bonilla v. Hospital Auxilio Mutuo</u>, 186 D.P.R. 365 (2012) and <u>Maldonado-Rivera v. Suárez</u>, 195 D.P.R. 182 (2016), the tort claims against her are time-barred. The accident occurred on April 5, 2018, and she was brought into the case on February 3, 2020, way over a year after the accident occurred. Under Puerto Rico law, she must either be timely sued, or the prescriptive period be individually and timely tolled for claims to be actionable against her. Neither was done in the present case. In the alternative, Walker avers that, even if the claims are not time-barred, the Fraziers lack evidence to establish that she was negligent and/or that her purported negligence was the

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 10 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 10
_____

cause of Merlino's accident and Plaintiffs' resulting damages.

The Fraziers argue in their opposition to the motion for summary judgment that the second-floor rental was a novation of the already existing Agreement covering the first-floor units, so the hold harmless clause applies. As to the time-bar issue, the Fraziers contend that perfect solidarity exists between them and Walker and, pursuant to Puerto Rico law, the timely filing of the Complaint against the Fraziers served to interrupt the statute of limitations against all tortfeasors, including Walker. Furthermore, the Fraziers point to Walker's negligent conduct in breach of contract when she failed to stay at the property, allowed a party to be held onsite with guests consuming alcohol and permitted unauthorized individuals to wander around the second floor. They also assert that Walker was timely sued because a breach of contract claim carries a fifteen (15) year statute of limitations which has not yet expired. Hence, they ask that Walker's request for summary judgment be denied.

Walker argues in her reply that the rental of the second-floor unit was a new, and different obligation between the Fraziers and Walker, not a novation of the executed written Agreement. As the Agreement only specifically covered the rental of the first-floor units, the hold harmless clause against the Fraziers applies only to those units and not to the second floor where Merlino fell from. Walker additionally denies that perfect solidarity exists, insisting that the relationship between the Fraziers and her is premised on imperfect solidarity which, pursuant to Puerto Rico Supreme Court caselaw, required a separate and independent act of tolling as to all tortfeasors. The Fraziers argue in their sur-reply that there are issues of fact that preclude the entry of summary judgment since

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 11 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 11
_____

Walker claimed that there was no intent by the parties to novate the existing contract, which is for a jury to assess.

Therefore, the issue in this case hinges on a determination of the type of relationship between the Fraziers and Walker. This case is premised on diversity jurisdiction, so Puerto Rico substantive law applies. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817 (1938); Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 528 (1st Cir. 2023).

**A. Applicable law.**

In Fraguada, the Puerto Rico Supreme Court changed the longstanding norm that tolling against one tortfeasor worked against all of them, as originally held in Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992). Fraguada found that the plaintiff's lawsuit against a defendant doctor was untimely insofar as the plaintiff filed the claim against him six (6) years after the case began. The Court at that time distinguished between perfect and imperfect solidarity, finding that perfect solidarity existed "between various persons united by a common interest, who have frequent relationships or know each other", whereas imperfect solidarity existed between "people who do not know each other, who are only accidental co-tortfeasors or when they have sporadic relationships." Fraguada, 186 D.P.R. at 380. When there is imperfect solidarity between multiple tortfeasors, Fraguada now requires a plaintiff to toll the statute of limitations individually as to each defendant within the one-year statute of limitations.

Maldonado-Rivera further developed this issue but in the context of third-party claims for damages relating to tortfeasors in imperfect solidarity. The issues presented in Maldonado-Rivera were whether a third-party claim could be brought against a time-

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 12 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 12
_____

barred tortfeasor, and whether a subsequent action to recoup or of contribution (so called "nivelación" under Puerto Rico law) could be brought under the same circumstances. The answer to both questions was no.

As to the first issue, the Supreme Court held that if the statute of limitations had run on a plaintiff's claim for damages against an absent tortfeasor, other co-defendants who were timely sued could not bring third-party claims against that absent tortfeasor. As to payment, if the plaintiff ultimately prevailed, he or she could recover the whole amount from all timely brought defendants but the percentage of liability attributable to the absent party would be deducted from the total compensation awarded. The Court reasoned this was a type of sanction for a plaintiff failing to timely file the claim against the absent tortfeasor. In other words, the plaintiff could recover the whole amount minus the portion belonging to the time-barred, absent party.

As to the subsequent action for contribution, the Court reasoned that it could not go forward either, as it was contingent on the primary cause of action. The Court found that "what is not permitted in a direct action cannot be allowed, indirectly, through a third-party claim." Maldonado-Rivera, 195 D.P.R. at 208. Therefore, if the third-party complaint is found to be time-barred, the subsequent action for contribution likewise cannot succeed.

**B. The Agreement.**

The Fraziers argue that perfect solidarity exists between them and Walker insofar as the rental agreement bound both parties. Therefore, the Walker's position is that, when Plaintiffs filed the Complaint against them, this tolled the statute of limitations as to

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 13 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 13
_____

Walker as required under perfect solidarity pursuant to Fraguada. The Court cannot agree.

It is uncontested that Walker first contacted Campóo about the rental of the first-floor units because the second floor was not available at that time. The Agreement covered only the two (2) units on the first floor of Casa Isabela, which were listed via the HomeAway platform. There is no dispute that the units were listed and rented separately, and that the existing Agreement indicates that it was for the two downstairs units, the "West and East" apartments, from April 2-8, 2018, for eight (8) people for the price of $3,100.86. On January 25, 2017, Walker paid $500.00 to hold the reservation. On April 24, 2017, the Agreement was signed by Walker, and for some reason signed again in December 2017.

It is also uncontested that the second-floor unit was not available when Walker first notified Campóo of her interest in the first-floor rentals. The second floor became available almost a year later, on March 13, 2018, after Walker had already signed the Agreement covering the first-floor units and already paid for them. The parties bicker over how the second-floor rental was effected, and whether it was via HomeAway or via Airbnb. That factor is ultimately not relevant to the issue at hand.

In March 2018, Walker saw that the second floor of Casa Isabela was available and told Campóo she was interested in renting it as well. Walker asked Campóo to send her the contract for the second-floor unit. On April 3, 2018, Campóo sent her information and an invoice for $1,377.50 but never sent Walker a written contract. Walker paid that same day through PayPal. Campóo testified that, although she did not recall whether she listed Casa Isabela on Airbnb, she did not require a contract for properties such as the

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 14 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 14
_____

second story unit that are rented via the Airbnb platform. David Frazier also testified that sometimes rentals are done directly through Campóo and not through a platform. In any event, there is no dispute that the rental of the second-floor unit was paid for *after* the first-floor rental had been agreed upon and paid for.

Under Puerto Rico law, a contract has three elements: (1) consent of the contracting parties; (2) a definite object which may be the subject of the contract, and (3) a cause for the obligation established. P.R. Laws Ann. tit. 31, § 3391 (1930).

The first and second-floor units were rented separately and at different times, and each unit is a different, definite object with a different cause in terms of entering into a rental agreement. The Agreement makes no mention whatsoever of the second-floor unit. It is also uncontested that the second-floor unit was not rented and paid for until later, on April 3, 2018. Thus, as correctly argued by Walker, she and the Fraziers entered into two different, binding obligations. The first one was the rental and payment for the first-floor units, labeled in the Agreement as the "East and West" apartments. The second was the rental and payment for the second-floor unit. The object, consent, and consideration certainly differ as to the renting of the two floors. An additional payment was tendered, for a different apartment, in another floor, for a different number of guests, and with other instructions for its use, to wit, a limitation on access of tenants in the second-floor space. These are all additional, distinct matters not covered in the original Agreement for the first-floor units.

The Fraziers argue that the written Agreement was somehow later modified when they rented the second-floor unit, known as a "modificatory novation" under Puerto Rico law. However, they have presented no evidence whereby this can even be inferred. At a

minimum, as argued in the Frazier's own opposition, there should be what the Puerto Rico Supreme Court labeled "un ánimo de cambio"[2] (loosely translated to "a wind of change"), and there is simply no evidence of that on this record.  The fact that the Agreement in question does not mention the second-floor unit, coupled with Campóo's admission that she sometimes did not use contracts and does not recall sending a second contract for Casa Isabela, weighs against the Fraziers.  In fact, Walker's testimony that there was no contract for the second-floor rental stands uncontested, as the Fraziers cannot oppose this material fact by simply proffering Campóo's testimony that she did not recall whether or not she sent one.  See United States v. Rahman, No. 19-CV-1113-PB, 2022 WL 14813534, at *6 (D.N.H. Oct. 25, 2022) ("Mere lack of recall about a particular event, without more, does not create a genuine dispute as to whether the event actually occurred"); I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 55 (1st Cir. 1999).

The Agreement explicitly states that it only applied to the first-floor units, the East and West apartments.  Thus, it is undeniable that there was no contract for the second-floor rental, and the Fraziers have been unable to establish that the Agreement for the first-floor rentals applied to the second floor as well.  See P.R. Laws Ann. tit. 31 § 3471 (1930) ("[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed").  Although all reasonable inferences must be made in the Fraziers' favor at this stage, the leap they wish the Court to make is too large.

---

[2] Docket No. 153, p. 9.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 16 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 16
_____

Therefore, the Court finds that the rental of the second-floor property is not governed by the existing Agreement. Accordingly, the Fraziers cannot premise liability against Walker based on the Agreement's hold harmless and indemnification clause.

### C. The Relationship between Walker and the Fraziers.

The Fraziers' argument that perfect solidarity exists between them and Walker due to the existing Agreement cannot prosper having established that there was no written agreement covering the second-floor unit. This leaves Walker solely liable to the Fraziers for her own negligence under Article 1802. Nonetheless, pursuant to Maldonado-Rivera, these claims are time-barred because Walker and the Fraziers only enjoyed imperfect solidarity.

As established by Fraguada, perfect solidarity exists between various persons united by a common interest, who have frequent relationships or know each other, as opposed to strangers who are accidental co-tortfeasors or who have a sporadic relationship between them. The record shows that the Casa Isabela rental was negotiated entirely by Walker and Campóo, and David Frazier did not intervene. Campóo managed the Frazier's rentals and had access to David Frazier's Paypal account, passwords and his HomeAway platform listing and did all the work when renting Casa Isabela. The record does not mention any sort of relationship between Walker and the Fraziers, but rather only indicates they spoke once after the accident as a result thereof. The rental of the units, which was a one-time affair to accommodate the groomsmen attending the wedding of Walker's son, is therefore the only instance of any type of arrangement between them. There is no other evidence on the record from which the Court can conclude that Walker and the Fraziers had the type of frequent relationship that Fraguada and its progeny have

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 17 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 17
_____

established is necessary for perfect solidarity.  This limited and sporadic contact between the Fraziers and Walker is indicative of imperfect solidarity, which required a separate and distinct act of tolling as to Walker prior to her inclusion as a defendant or third-party defendant in this case.  It is uncontested that no tolling was effected and Walker was brought into the case over a year after the accident occurred.  Hence, the negligence claims against Walker are time-barred and cannot prosper.

The Fraziers' position is that Maldonado-Rivera only applies in the context of a third-party complaint brought against a potential joint tortfeasor, as opposed to a third-party defendant which is allegedly contractually bound to the third-party plaintiff as in the present case.  They argue Merlino never considered Walker a co-tortfeasor (presumably because they were friends as Merlino was one of her son's groomsmen) and Merlino could not know of the hold harmless clause contained in the Agreement.  Merlino, as the injured party, had the opportunity to bring Walker as a co-Defendant but failed to do so.  That litigation choice is unfortunately to the detriment of both Merlino and the Fraziers.

Maldonado-Rivera was clear that it dealt with the relationship between *the original plaintiff and the third-party defendant*, and the viability of the original plaintiff's claim as to that tardily brought third party defendant, irrespective of whether or not there was a contractual relationship.[3]  Thus, under Maldonado-Rivera, if Merlino's claim against Walker, a co-tortfeasor, has expired, a timely sued defendant such as the Fraziers

---

[3] The Court notes that, although the Fraziers argue otherwise now, they clearly understood this dynamic, as they specifically allege in their Third-Party Complaint that "Walker is liable *to plaintiffs* based upon the indemnity and hold harmless clause in the short-term lease agreement and based upon her own negligence." Docket No. 41, ¶ 12. (Emphasis added).  This is precisely the situation that Maldonado-Rivera addresses.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 18 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 18
_____

is barred from bringing Walker to the lawsuit via a third-party complaint. This is so because, as correctly argued by Walker, under Article 1802 the holder of the right is the injured party, in this case Merlino, and not the Fraziers who are not suing directly but rather on a subsidiary basis. Once Merlino's ability to claim liability from Walker ceased to exist, so did the Fraziers' ability to claim liability from Walker and also to recoup in a subsequent claim of "nivelación." As explained by the Maldonado-Rivera court, it is a type of penalty for failure to timely bring in a party, and "the expiration of the statute of limitations constitutes a form of extinction of a right due to the inertia in exercising such right by its holder, for a determined period of time." Maldonado-Rivera, 195 D.P.R. at p. 212.[4]

Therefore, the Fraziers' claim was always dependent on Merlino timely bringing Walker into the case or interrupting the claims against her or in the alternative, the Fraziers doing the same. Neither of them did so. Thus, Maldonado-Rivera's axiom that what cannot be brought in via a direct action is also barred when brought indirectly through a third party claim squarely applies here.

In view of the above, the Fraziers may only assert a claim against Walker based on her own negligence which is time-barred, as the relationship between Walker and Frazier was one of imperfect solidarity and the action against Walker was not individually tolled.

**D. Walker's alleged negligence.**

Finally, Walker argues *in the alternative* that, if the Court finds that the claims against her are not time-barred, she was not negligent and the Fraziers will be unable to

---

[4] By the same token, Merlino may be equally prejudiced by his failure to directly include Walker as a defendant because, in the event a jury finds in his favor and determines Walker was negligent, the percentage belonging to her responsibility will be deducted from the total amount the jury awards Plaintiffs.

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 19 of 20

Frank Nicholas Merlino, et al, v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 19
_____

prevail because: 1) she was not responsible nor negligent in the design or construction of the balcony rail; 2) she did not create the condition that caused Merlino's fall and resulting injury; and 3) Merlino's fall was not foreseeable.

To this effect, the Fraziers contend that Walker was negligent in permitting a party at the property and other people to roam about the second floor when Campóo had explicitly warned her against it. According to Campóo's testimony, Walker told Campóo she and her husband would be staying in the second story unit, and the fact that they were professionals was one of the reasons Campóo agreed to the rental. Campóo further testified that she told Walker that the second-floor unit was the Fraziers' master bedroom and that no one but her and her husband should be on that floor. Campóo also allegedly told Walker there should be no parties. However, Merlino, who was allegedly not authorized to be on the second floor, fell off the second-floor balcony during a supposedly unauthorized party while apparently intoxicated. Walker admitted she had not been to Casa Isabela before the incident and stayed elsewhere.

Walker rebuts the above saying that she was given no such warnings by Campóo and that allowing the party does not constitute negligence. The Fraziers attempt to bring this as a breach of contract claim to avoid the dismissal of their time-barred Third-Party Complaint as discussed above.

There is no need for the Court to determine whether Walker was negligent because her claims are time-barred, as above discussed. However, in compliance with <u>Maldonado-Rivera</u>, if the jury finds in favor of Plaintiffs, it will have to determine whether Walker is liable for negligence under Article 1802 (in permitting such behavior as she was the lessor

Case 3:19-cv-01304-CVR   Document 161   Filed 03/08/23   Page 20 of 20

Frank Nicholas Merlino, et al. v. David B. Frazier, et al.
Opinion and Order
Civil 19-1304 (CVR)
Page 20
_____

of the unit on the second floor) and establish the percentage of liability attributable to Walker which would be deducted from the total compensation awarded to Plaintiffs.[5]

## CONCLUSION

For the above-mentioned reasons, Third-Party Defendant Clare Walker's "Motion for Summary Judgment" (Docket No. 124) is GRANTED, and all claims filed against her in the Third-Party Complaint are DISMISSED WITH PREJUDICE.[6]

Partial judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 8th day of March 2023.

                                          S/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ-RIVE
                                          UNITED STATES DISTRICT JUDGE

---

[5] This is a distinct and different issue from the appropriate height of the second story balcony railing, which is undoubtedly the Fraziers' responsibility as owners of Casa Isabela and as to which there are issues of fact that must be addressed at trial by expert testimony and ultimately a matter for the jury to resolve.

[6] The Third-Party Complaint included John Doe (as Walker's husband) and the Conjugal Partnership Walker-Doe. (Docket No. 41, paragraphs 5 and 6). However, Walker denied in her answer to the Third-Party Complaint said paragraphs. (Docket No. 98). Thus, any claims which may have been brought against John Doe and the Conjugal Partnership Walker-Doe in the Third-Party Complaint are dismissed with prejudice as well.